**DAVID M. MICHAEL, CSBN 74031**
**LAW OFFICE OF MICHAEL & BURCH LLP**
**One Sansome Street, Suite 3500**
**San Francisco, CA 94104**
**Telephone:   (415) 946-8996**
**Facsimile:    (415) 946-8837**
**E-mail:      david@michaelburchlaw.com**

**Attorney for Defendant**
**EVGENI KOPANKOV**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

EVGENI KOPANKOV,

        Defendant.

_____/

**No. 19-CR-00178 VC**

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO WITHDRAW GUILTY PLEA AND SET CASE FOR JURY TRIAL**

**Fed Rules Crim Pro 11(d)(2)(B)**

      Defendant KOPANKOV hereby replies to the government's United States Opposition to Defendant's Motion to Withdraw Guilty Plea.  Doc. 171, filed 04-12-22.

      At the onset, it should be emphasized that the decision to allow withdrawal of a plea prior to sentencing is within the sound discretion of the district court and the defendant's burden for such relief, to show a fair and just reason, should be applied liberally, based on newly discovered evidence and intervening circumstances that did not exist at the time he entered his plea.  *United States v. Ortega-Ascanio* 376 F.3d 879, 883 (9th Cir. 2004).

**A.      Defendant Borisov And The Fog Of Cocaine And Alcohol Addiction.**

      The government in its opposition seriously downplays the serious addiction by Defendant Borisov to cocaine and alcohol. The government states that in EK-0000482, there is a discussion between Brooks and Borisov where Brooks tells Borisov where he gets his stuff. Opp. at 10:3-5. (This is obviously Brook's problem). The government also alleges that at EK-

0000692 a witness states that he drank and used cocaine with Borisov. Opp. at 13:6-7. At EK 0001007, the government alleges that the same witness states that Borisov used small amounts of cocaine and sold gram quantities of cocaine to make money. Opp. at 10:7-9.  Lastly, at EK 0002452, the government alleges that the same witness said that Borisov used cocaine at one of their meetings.  Opp. at 10:9-11.

Assuming that the "witness" identified in the government's discovery is even someone capable of testifying, those disclosures only identify cocaine use – and minor use at that.  But these disclosures do not come close to addressing the admissions by Borisov and his attorney at the sentencing hearing on February 2, 2022.  The difference between simple use of cocaine and cocaine addiction over a vast period of 5 years along with alcohol addiction for that same period of time is vast.

It is worth repeating here the admissions by Mr. Borisov at his sentencing that "**[m]y life's been completely mess before that. I was on drugs for probably five years of my life.**  I did take bad decisions.  And I cannot change any of that." Tx. of 2-2-2022, at 30: 1-4.

Also are the statements by Borisov's attorney, James Bustamante at the sentencing that "**[h]is [Borisov's] existence at the time was fueled by alcohol and cocaine addiction,** and both the alcohol and cocaine was provided, on numbers of occasions during the course of these meetings, to Mr. Borisov" (Tx. of 2-2-2022 at 20:8-14) and "**[h]e was living in la-la land, fueled by a fog of cocaine every day for five years, and alcohol.**" Tx. of 2-2-2022 at 21:18-20, and **"….this fog and crazy lifestyle that he lived back when this ridiculous thing was put together…"** Tx. of 2-2-2022 at 25:11-13.

As the above reveals, Mr. Borisov had been **addicted** to cocaine and alcohol during the relevant times of the allegations in the government's Indictment as well as before then and that he was fueled by a fog of cocaine and alcohol **every day for five years.**

What is critical to Kopankov's Motion to Withdraw His Plea as to Borisov, is that there is uniform agreement by experts in the field that cocaine addiction creates neuropsychological impairment which directly affects memory and causes memory loss:

Accumulating evidence suggests that dependent (Goldstein et al, 2004; Jovanovski et al, 2005; Vonmoos et al, 2013; Woicik et al, 2009) and also recreational (Colzato et al,2009; Reske et al, 2010; Soar et al, 2012; Vonmoos et al, 2013) cocaine use is associated with broad neuropsychological impairment. Remarkably, a first study indicates that 30% of dependent users and even 12% of recreational users exhibit clinically relevant global cognitive impairment (Vonmoos et al, 2013). **Studies have shown deficits in** attention, **working memory, and declarative memory in chronic cocaine users…** (Jovanovskiet al, 2005; Vonmoos et al, 2013).

(Vonmoos, M., Hulka, L. M., Preller, K. H., Minder, F., Baumgartner, M. R., & Quednow, B. B. (2014), *Cognitive impairment in cocaine users is drug-induced but partially reversible: evidence from a longitudinal study.* Neuropsychopharmacology : official publication of the American College of Neuropsychopharmacology*, 39(9), 2200–2210. https://doi.org/10.1038/npp.2014.71* (emphasis added). [1] *See, also*, Moriarty 2 *Psychological and Scientific Evidence in Criminal Trials* § 12:18 (2021):

> Confabulation—Confabulation with drugs/alcohol
> Individuals who are alcoholics drinking heavily may develop what is termed "alcoholic" induced amnesia," more commonly referred to as "blackouts. During blackouts, the person may behave normally (albeit drunkenly) but will later have no memory of what they have done. When they are sober, they will often piece together from a variety of cues a memory to fit into the missing section of memory. They are very susceptible to suggestion concerning that time period and will often go along with an idea put into their head by someone else, whether true or not.
> Likewise, drug use has been found to interfere with memory processes.
>
> **When individuals snort large amounts of cocaine**, smoke any amount **or inject any amount of cocaine,** they are sometimes referred to as "high dose users" and are **believed by those studying addiction to have substantial memory impairment, especially when such use is coupled with alcohol. The perception and memory of those individuals are highly suspect and there is a fairly certain belief that those people are likely to engage in confabulation to account for such memory gaps. (emphasis added)**

There is no evidence that, prior to his plea, Kopankov was ever aware of Borisov's cocaine and alcohol **abuse and addiction**. And as stated in Kopankov's motion, Borisov's memory is critical to any evidence against Kopankov if his case went to trial. There are no

---

[1] Viewable at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4104339/

incriminating statements by Kopankov in any recorded conversations with Borisov. If Borisov were to testify against Kopankov at trial, he would only be able to rely on his memory of anything said between them as to any agreement by Kopankov to participate in the alleged crimes.  Consequently, Borisov's state of mind and his present ability to recall events and conversations that occurred almost three (3) years ago, are critically relevant to his credibility as to this period of time. The statements made by Bortisov and his counsel at his sentencing were and are critical to Kopankov's decision to withdraw his own plea.

For the reasons stated above, Kopankov is confident that he would be able to seriously dispute any incriminating testimony by Borisov at trial.  Importantly, Kopankov believes he is innocent of the charged offenses and, without any credible testimony by Borisov due to his neuropsychological impairment as a result of his cocaine and alcohol addiction for 5 years, Kopankov would be able to prove his innocence at trial.  That is also supported by the fact that there is no other physical evidence against Kopankov, other than some alleged overheard unrecorded statements that the CI could possibly testify to. As a result, Kopankov is far less concerned about the government attempting to convict him based on any testimony of Borisov.

As set out in his motion, Kopankov had a perfectly legal and business reason to travel to Humboldt County during that relevant time period. Consequently, the statements by Borisov and his counsel at sentencing are extremely important to Kopankov in his ability to defend himself against the charges in the Indictment.

**B.    The Confidential Informant (CI)**

As stated in Kopankov's motion, evidence related to charges against the Confidential Informant (CI) is not the most critical basis for his request to set aside his plea.  That is because, as explained in the motion, despite the scores of recorded in-person and telephonic conversations between the CI and co-defendant Borisov and co-defendant Brooks, there exists no in-person or telephone conversations between the CI and Kopankov.  In fact, Kopankov never met the CI during all the relevant times in this case. Actually, there is no evidence that Kopankov had ever met the CI.

In its opposition, the government is correct that it disclosed the existence of charges against the CI, including his arrest and the complaint filed against him.  But, as the government concedes, at the time of the filing of Kopankov's plea agreement on June 23, 2021 (Doc. 116) and its acceptance by this Court on the same day (Doc. 118), neither Kopankov, nor apparently the government, were aware of the CI's Indictment on June 10, 2021, 13 days earlier. That fact seems to be undisputed. [2]

It needs no citation to authority for this Court and counsel to know that there is a serious difference between a complaint and an Indictment.

A criminal complaint authorizes the charge and arrest of persons who are thought to have broken the law. The complaint is simply a document that lists the targets for arrest as well as a sworn affidavit from an agent that must demonstrate probable cause.

Unlike a complaint, Indictments are issued by grand jurors, a group of citizens who pass on multiple cases to determine if enough evidence exists for a case to go to court and, if necessary, trial. Federal grand juries comprise of between 16 and 23 people and each case must receive at least 12 votes establishing that probable cause exists that the target(s) committed a specific federal offense.

That the CI was indicted by a federal grand jury is vastly more significant than that he was charged by complaint solely on the basis of a sworn affidavit, not subject to any scrutiny. In addition, once an Indictment is filed, the government loses control over the disposition of a case. Any attempt to dismiss an Indictment or modify its terms or otherwise change an Indictment, must meet the approval of the District Court judge overseeing the case.  Thus, an Indictment

---

[2] This Court may also wonder why the government so suddenly arrested and charged the CI around the same time as the plea negotiations and plea agreements in this case were taking place. The Complaint against the CI was filed on May 21, 2021, and unsealed May 24, 2021.  Gov. Opp. at 8:6-9 and the Indictment was filed on June 10, 2021.  Yet the crimes alleged in the complaint against the CI occurred between November 8, 2018 and October 28, 2019, **two to three years previously**. **Exhibit 4**, *passim.*  The possibility exists that the government, wanted to demonstrate that, if the CI would testify against Kopankov, it could claim that the CI was not getting any special treatment for his own criminal behavior. But, of course, that remains only thoughtful speculation.

takes the power over charges against a defendant from the government and rests it in the sole power and control of the judiciary.

In addition, it can be argued that the Indictment, rather than the complaint, strongly interferes with any intended testimony of the CI at any trial of Kopankov or, at least, makes such testimony far more subject to impeachment and serious cross-examination than would a criminal complaint composed by a government attorney, not subject to an inquiry by members of a grand jury, and easy to dismiss.

For the above reasons, the fact that the CI was indicted, and that the Indictment was not known by Kopankov at the time of the entry of his plea, is also a fair and just reason for requesting the withdrawal of his plea, and where the standard for a fair and just reason must be applied liberally.   Fed. R. Crim. P. 11(d)(2)(B); *United States v. Ortega-Ascanio* 376 F.3d 879, 883 (9th Cir. 2004).

**C.     The Government's Argument That Kopankov's Revaluation of the Strength of the Government's Case Against Him Is Not a Fair and Just Reason to Withdraw His Guilty Plea**

In support of this argument, the government cites to *United States v. Showalter*, 569 F.3d 1150, 1155 (9th Cir. 2009) (Opp. at 7:13 and Opp. at 11:11-19).  That case held that a mere showing that defendant has since reevaluated the government's case against him and 'second-guessed his decision to plead guilty' does not meet defendant's burden to establish a fair and just reason for withdrawal. *Id.*

But as is clear, Kopankov's motion to withdraw his plea is NOT based on such mere second-guessing.  It is based on the bedrock principals set out in *United States v. Garcia*, 401 F.3rd 1008, 1011 (9th Cir. 2005) as to a fair and just reason for making that request, based on newly discovered evidence and intervening circumstances that did not exist at the time he entered his plea. Kopankov was not aware at the time of his plea that Borisov was "living in la-la land" in "a fog of cocaine [and alcohol abuse] every day for five years" **and** that a grand jury had examined the evidence and determined the CI in his case was likely guilty of a crime of dishonesty.

In fact, as the court in *United States v. Garcia*, 401 F.3rd 1008, 1011 (9th Cir. 2005) explained, a defendant does not even have to claim, or show that new evidence proves, his innocence to prevail on a motion to withdraw a plea.

> [T]he generous "fair and just reason" standard does not require that the defendant show that the new evidence exonerates him or that there is a reasonable probability he would not have been convicted had the case gone to trial. …Though many legitimate reasons for withdrawal relate to a defendant's legal or factual innocence, some defendants may have valid reasons for withdrawal that have nothing to do with innocence. For example, newly discovered evidence might bolster a defendant's defense, partial defense or other mitigating circumstance; these are perfectly legitimate reasons to withdraw a plea, regardless of whether the defendant has asserted his innocence. *See, e.g.*, *Morgan*, 567 F.2d at 493 (holding that the district court abused its discretion when it refused to allow a defendant to withdraw his guilty plea under the "fair and just reason" standard on the basis of new evidence bolstering an insanity defense).

*Garcia*, *supra*, 401 F.3d at 1011, 1013.

The *Garcia* court pointed out that a declaration from a witness was "important both because it directly contradicts part of Carol Coley's statement against Garcia and because it distances Garcia from the house where the firearms and drug paraphernalia were seized" and thereby "raises new questions about Garcia's involvement in the illegal activity at the house." 401 F.3d 1008, 1011-1012. It was enough that "[h]ad Garcia known about this evidence earlier, he may well have changed his mind about whether to plead guilty" to make it a fair and just reason to withdraw, and importantly the Court emphasized that "[w]e need not hypothesize about the ripple effect of the new evidence or speculate about its potential effect on a jury [because] [i]t is **sufficient that this evidence was relevant evidence in Garcia's favor that could have at least plausibly motivated a reasonable person in Garcia's position not to have pled guilty had he known about the evidence prior to pleading**." *Id.* (emphasis added). Just so here.

The government's further citation to *United States v. Garcia-Lopez*, 903 F.3d 887, 894 (9th Cir. 2018) and *United States v. Rojas Osorio*, No. 17-CR-00507-LHK-1, 2018 WL 6069935, at *3 (N.D. Cal. Nov. 20, 2018) (Opp. at 12:9-13) is also irrelevant to this matter. Both those cases address a motion to withdraw a plea based on a change in governing law. That is

obviously not the issue here.

Lastly, the government's citation to *United States v. Zeng*, No. CR 05-00465 JSW, 2007 WL 902380, at *2 (N.D. Cal. Mar. 22, 2007) (Opp. at 12: 13-14) is also irrelevant to the issues in Kopankov's motion, As the government concedes, *Zeng* only involved "confusion about the charge and his guilt" during the plea colloquy. *Id.*

The cases cited by the government have no application to the facts and representations in this case.

**D.    The Admissibility of Kopankov's Statements In His Plea Agreement And At The Hearing Before This Court**

The government alleges that, even if this Court allows Kopankov to withdraw his plea and sets this case for trial, "Paragraph 2 of the plea agreement, as well as his sworn admissions to them in court (such as at the June 23, 2021 change of plea hearing), should be admissible against him at trial."  Opp. at 12:27 and 13:1-3

But this allegation asks this Court to act in violation of both Rule 11 of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.

Federal Rules of Criminal Procedure, Rule 11(f) states as follows:

> ADMISSIBILITY OR INADMISSIBILITY OF A PLEA, PLEA DISCUSSIONS, AND RELATED STATEMENTS. The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410.

Federal Rules of Evidence, Rule 410(a) states as follows:

> **(a) Prohibited Uses.** In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>    **(1)** a guilty plea that was later withdrawn;
>    **(2)** a nolo contendere plea;
>    **(3)** a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure.

To the extent that *United States v. Molinaro,* 11 F.3d 853,864 (9th Cir. 1993) or the unpublished decision in *United States v. Moore,* 164 F. 3d 632, *5 (9th Cir. 1998) (unpub.),

both cited by the government (See, Opp. at 13, fn.9) may say otherwise, they are, when faced with Federal Rules of Criminal Procedure, Rule 11(f) and Fed Rules of Evidence, Rule 410(a), no longer good law.

## CONCLUSION

Pursuant to Federal Rules of Criminal Procedure 11(d)(2)(B), and for the foregoing reasons, Kopankov hereby requests that the Court allow him to withdraw his guilty plea entered on  June 23, 2021 because he has shown, pursuant to the authority of  *United States v. Garcia*, 401 F.3rd 1008, 1011 (9th Cir. 2005), a fair and just reason for making that request, based on newly discovered evidence and intervening circumstances that did not exist at the time he entered his plea.

Respectfully Submitted,

Dated: April 14, 2022

*s/David M. Michael*
DAVID M. MICHAEL

Attorney for Defendant
EVGENI KOPANKOV

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF ELECTRONIC SERVICE</u>**

I hereby certify that, on April 14, 2022, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                    *s/David M.Michael*_____
                    DAVID M. MICHAEL

                    Attorney for Defendant
                    EVGENI KOPANKOV

Defendant's Reply Brief In Support Of Motion To Withdraw Guilty Plea And Set Case For Jury Trial
Case No. 19-cr-00178