UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

EVGENI KOPANKOV,

                    Defendant.

Case No.  19-cr-00178-JSC-1

**ORDER RE: MOTIONS IN LIMINE**

Re: Dkt. Nos. 248, 249

## INTRODUCTION

After conducting a pretrial conference on April 27, 2023, and carefully reviewing the arguments, briefing, and exhibits submitted, the Court rules on the parties' motions in limine as follows below.  In addition, the Court sets a further pretrial conference for May 10, 2023, at 1:00 p.m., at 450 Golden Gate Avenue, San Francisco, Courtroom 8, 19th Floor.

**I.       GOVERNMENT'S MOTIONS IN LIMINE (DKT. NO. 248)**

**1.       Exclude references to Kopankov's punishment, consequences, or appeals to sympathy or nullification**

"The government moves to preclude as irrelevant and unduly prejudicial any reference by the defense to Kopankov's potential sentence or punishment, potential collateral consequences of conviction, or the fact that this case has been ongoing for an extended period during all phases of the trial, including jury selection, opening statements, examination of witnesses (including Kopankov, if he elects to testify), and summation."  (Dkt. No. 248 at 7.)[1]

This motion is GRANTED in part and DENIED in part.  The motion is GRANTED to the extent it seeks exclusion of references to Kopankov's potential punishment for this offense, collateral consequences of a conviction, or jury nullification.  The motion is DENIED as to "the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

fact that this case has been ongoing for an extended period of time" as the length of time since the alleged offense is relevant to witness's memories of past events. (*Id.*) The motion is also DENIED to the extent it seeks a blanket rule excluding "referring to Kopankov's personal circumstances." (*Id.* at 8.) For example, Kopankov's personal circumstances could be relevant to an affirmative defense. The government may renew this motion at trial when objecting to specific questions.

### 2. Preclude Defendant from introducing information not in evidence to the jury

The government moves to preclude Defendant from offering information not in evidence to the jury. (Dkt. No. 248 at 9.) This request includes prohibiting defense counsel from reading the contents of documents not in evidence to the jury under the "guise of questioning a witness or refreshing a witness's recollection." (*Id.*) Defendant does not oppose this motion so long as it is reciprocally applied to the government. (Dkt. No. 261 at 5.) The Court agrees. Thus, the motion is GRANTED.

### 3. Preclude evidence that could have been, but was not, produced in discovery

The government seeks to preclude the defense from offering evidence that could have been, but was not, disclosed during discovery. (Dkt. No. 248 at 10.) The government cites Federal Rules of Criminal Procedure 16(b) and 26.2 to support this motion. (*Id.*) Rule 16(b) creates procedures governing reciprocal discovery obligations in criminal matters. For defendants, the rule applies only when the defendant controls the evidence and "intends to use the item in the defendant's case-in-chief at trial." *See* Fed. R. Crim. P. 16(b)(1)(A)(ii). In addition, the rule does not apply to certain categories of information, including "reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense." Fed. R. Crim. P. 16(b)(2). Rule 26.2 requires that "[a]fter a witness other than the defendant has testified on direct examination," the court "must order an attorney for the government…or the defendant's attorney to produce, for the examination of use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2.

Given Rules 16(b) and 26.2, the government moves to preclude the defense from offering any evidence not produced in discovery and to provide witness statements before trial.  (Dkt. No. 248 at 10-11.)  The government contends this pretrial disclosure of witness statements is vital to ensuring efficiency at trial.  (*Id.*)  Defendant opposes this motion, arguing that a defendant may wait and see what defenses he will raise until after the government presents its case-in-chief.  (Dkt. No. 261 at 6.)

The Court DEFERS decision on the government's Rule 16 motion.  The Court will address specific objections as they come up at trial.  *United States v. Schuette*, No. 22-CR-00233-BLF-1, 2023 WL 163490, at *6 (N.D. Cal. Jan. 11, 2023).

The Court DENIES the government's motion under Rule 26.2 without prejudice.  Rule 26.2 does not require pretrial disclosure of witness statements.  Rather, it requires disclosure *after* a witness testifies in a party's case-in-chief.  The government's efficiency arguments are unpersuasive.  At this point, Defendant's witness list contains just one witness (an investigator) subject to Rule 26.2 disclosures.  (*See* Dkt. No. 268.)

### 4. Court should require Defendants proffer a good-faith basis for a *Henthorn*-type inquiry of law enforcement witnesses

The government moves to require Defendant make an offer of proof and relevance outside the presence of the jury regarding alleged misconduct by law enforcement officers prior to any questioning regarding such behavior.  (Dkt. No. 248 at 11-12.)  The government seeks to apply this rule to civilian witnesses as well.  (*Id.* at 11.)  "The [g]overnment refers to alleged misconduct as *Henthorn*-type material because under *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), the Government must disclose 'the personnel files of testifying officers' if those files contain evidence that is 'favorable to the defense [and] meets the appropriate standard of materiality.' *Id.* at 30–31. Such personnel files may contain references to alleged past misconduct." *United States v. Aiyaswamy*, No. 15-CR-00568-LHK-1, 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017).  Defendant objects that "limiting defense cross-examination, as the government proposes, would violate Mr. Kopankov's due process right to present a complete defense and his Confrontation Clause rights."  (Dkt. No. 261 at 6.)

The government's motion is GRANTED.  Defendant shall provide a written proffer regarding *Henthorn*-type questioning by May 4, 2023.  The government may file a response to particular lines of questioning by May 8, 2023.  The Court will conduct a further pretrial conference on May 10, 2023 at 1:00 p.m. to further consider the proffer and the government's objections.

### 5.        Defendant's post-arrest interview

The government moves to admit Kopankov's post-arrest interview in April 2019.  (Dkt. No. 248 at 12.)  Defendant moves to exclude that interview on grounds that (1) the Miranda warnings were inadequate, and (2) Kopankov did not knowingly and intelligently waive his rights due to the language barrier and his unfamiliarity with the American legal system.  (Dkt. No. 249 at 21-24.)

### a.        The *Miranda* Warning

At the start of the interview, agents told Kopankov: "I think you've probably been around long enough to know about um you know when you are under arrest and you get questioned and all that, I am not going to ask you any questions." (Dkt. No. 249-1 at 00:25.)  Kopankov responds "why am I arrested."  (*Id.*) To which the agent responds, "I am not going to ask you any questions, I am going to tell you some stuff."  (*Id.* at 00:40.)  After the agent describes the alleged conspiracy, Kopankov responds "You have some proof?" (*Id.* at 1:30.) The agent responds "[W]e went to a federal judge and got arrest warrants for everybody…." (*Id.*)

The following exchange then occurs:

> **Agent**: So, you have your Miranda rights, your right to remain silent, get an attorney, you know all these, and I can read those for you. What I'm going to ask you is. . .
>
> **Kopankov**: I don't know, I've never been arrested.
>
> **Agent**: Okay, well you do have the right to remain silent. If you give up that right and you speak to us, anything you say could be used against you in a court. You have the right to an attorney, uh, and to consult attorney [*sic*] before you answer any questions or talk to us. And if you can't afford an attorney, you can get one appointed for free, uh, to consult with before you talk to us.  And . . .
>
> **Kopankov**: If I don't understand. My English is not very good actually.

**Agent**: Okay. Well if you cannot afford a lawyer, you get one free, you understand that?

**Kopankov**:  Yeah.

**Agent**: Okay. So the thing is, you can pick and choose any questions you want to answer, you can ask me questions and I will answer them if I can, but to do that you need to waive your rights, you have to say "I am willing to talk to you and I don't need my attorney right now." And we can do that, or you can leave it as it is and not share your side of the story tonight."

**Kopankov:** I'm not [Unintelligible Audio].

**Agent**: Right now there's a bunch to the story but nothing from you. Do you want to share your part of the story?

**Kopankov:** No. No. Which story?

**Agent:** About the robbery I just talked about.

**Kopankov:** About what? What is this? Okay, I don't get it seriously.

**Agent:** I can't explain it any cleaner, clearer, so what you don't want to talk to us?

**Kopankov:** I want to talk ok, let's go.

**Agent:** You do?

**Kopankov:** Yeah, let's go.

**Agent:** You do want to talk?

**Kopankov:** Yeah, I want to talk. About what? I don't know why I'm here.

(Dkt. No. 249-1 at 1:30-3:22; Gov's Trial Ex. 77 at 1-4.)

### b.    The Warning

Defendant argues this exchange was inadequate because the Ninth Circuit "has held that a putative *Miranda* warning is constitutionally defective when officers fail to advise defendants of their right to counsel *during* questioning even if they were advised of their right to counsel *prior* to questioning." (Dkt. No. 249 at 21-22 (citing *United States v. Noti*, 731 F.2d 610, 615 (9th Cir. 1984)).  In *Noti*,  the Ninth Circuit found the following Miranda warning inadequate because it did not inform the defendant of his right to counsel "*during* questioning as well as *before*" questioning:

> [Y]ou have the right to remain silent, the right to the services of an
> attorney before questioning, if you desire an attorney, and cannot
> afford one, an attorney will be appointed by the Court with no charge
> to you. Any statement you do make can and will be used against you
> in a court of law. Do you understand each of these rights?

*Noti*, 731 at 614;  *see also United States v. Bland*, 908 F.2d 471, 474, n.1 (9th Cir. 1990) (finding

failure to inform defendant of right to counsel during questioning required exclusion.)

The Supreme Court "has not dictated the words in which the essential information must be

conveyed" during a *Miranda* warning.  *Florida v. Powell*, 559 U.S. 50, 60 (2010).  The inquiry is

an objective one: whether the warnings reasonably "conve[y] to [a suspect] his rights as required

by *Miranda*."  *Id.* (cleaned up).  In *Powell*, the defendant was told:

> You have the right to remain silent. If you give up the right to remain
> silent, anything you say can be used against you in court. You
> have the right to talk to a lawyer before answering any of our questions. If
> you cannot afford to hire a lawyer, one will be appointed for you
> without cost and before any questioning. You have the right to use
> any of these rights at any time you want during this interview.

*Id.* at 54.  The defendant in *Powell* challenged the sufficiency of the warnings because he was not

explicitly told that he had the right to the presence of an attorney during questioning.  *Id.*  The

Court held that the warnings given did not "entirely omit any information *Miranda* required" the

warnings to impart; thus the suspect received adequate notification.  *Id.* at 62 (cleaned up).  The

warnings conveyed that the defendant could consult with a lawyer before questioning *and* that he

could use this right any time during the interview.  *Id.; see also United States v. Loucious*, 847

F.3d 1146, 1151 (9th Cir. 2017) (describing *Powell*).

The warnings given to Kopankov were insufficient under *Powell* and *Noti*.  *Powell*

emphasizes the *combination* of two statements was critical to proper *Miranda* advisement: (1) the

defendant had a right to an attorney before questioning; and (2) the defendant also had a right to

assert his right at any time *during* the interview.  Here, the warnings to Kopankov contained the

former.  But the agent never explained the latter: Kopankov's right to counsel during interrogation.

The government's contrary arguments are unpersuasive. The government argues the

warnings given to Kopankov were sufficient because, in combination, the agent's statements

implied a right to counsel both before and during the interrogation.  The government points to the

1    statement: "[Y]ou have to say, 'I am willing to talk to you and I don't need my attorney right

2    now.'  And we can do that, or you can leave it as it is and not share your side of the story tonight."

3    (Dkt. No. 249-1 at 1:30-3:22.)  According to the government, the words "right now" made it clear

4    Kopankov had a right to an attorney during questioning. (Dkt. No. 262 at 22.)  Put differently, the

5    government argues telling Defendant that if he wished to talk "right now" he needed to waive his

6    right to a lawyer accomplished the same function as the warning in *Powell* of "the right use any of

7    these rights at any time during the interview." 559 U.S. at 54.

8           The Court disagrees.  The agent never apprised Kopankov of his right to counsel during

9    questioning.  Indeed, the agent seems to have done just the opposite.  The agent implies Kopankov

10   can speak "right now," but *only* if he gives up his right to counsel.  That statement does not

11   "conve[y] to [a suspect] his rights as required by *Miranda*" to have counsel present *during*

12   questioning.  *Powell*, 559 U.S. at 60.  The government also argues the word "before," in context,

13   did not imply an attorney would *only* be available before questioning started.  (Dkt. No. 262 at

14   23.)  This argument cites to *Florida v. Powell*.  There, the Court held:

15                  In context, however, the term "before" merely conveyed when
                    Powell's right to an attorney became effective—namely, before he
16                  answered any questions at all. Nothing in the words used indicated
                    that counsel's presence would be restricted after the questioning
17                  commenced. Instead, the warning communicated that the right to
                    counsel carried forward to and through the interrogation: Powell
18                  could seek his attorney's advice before responding to "any of [the
                    officers'] questions" and "at any time ... during th[e] interview."
19

20   559 U.S. at 63.  The analogy between the word "before" in this case and *Powell*'s interpretation of

21   the word "before" is unpersuasive.  The *Powell* warnings made clear the right to continuously

22   reassert the right to counsel during interrogation.  The warnings here did not.  Defendant was

23   informed that he could speak during the interrogation, but only if he gave up his rights.[2]  Such

24   _____

25   [2] The government's citation to *Huynh v. Long*, No. 14-CV-00515-BAS BLM, 2015 WL 4923884,
     at *14 (S.D. Cal. Aug. 18, 2015) is similarly unpersuasive. (Dkt. No. 262 at 23.)  The government
26   describes *Huynh* as "holding that where the defendant was advised that 'he had the right to talk to
     an attorney before answering any questions asked by the detective and that the government will
27   pay for the attorney if [the defendant] does not have the money to do so,' such statements
     adequately advised the defendant 'of all of his *Miranda* rights.'" (*Id.*)

28   *Huynh*, however, makes clear the detective "accurately state[d] the next two rights relating to

United States District Court
Northern District of California

1    warnings were inadequate.

2        The government's citation to *Balbuena v. Sullivan*, 980 F.3d 619 (9th Cir. 2020), after the

3    pretrial conference does not persuade the Court otherwise.  *Balbuena* is an AEDPA case with an

4    entirely different burden structure and standard of review.  *Id.* at 631-32.

5               **c.**      **Knowing Waiver**

6        In the alternative, Defendant (a native speaker of Bulgarian) argues the waiver of his

7    Miranda rights was not knowing given his difficulty understanding English and his unfamiliarity

8    with the American legal system.   (Dkt. No. 249 at 23-24.)

9        For inculpatory statements made by a defendant during custodial interrogation to be

10    admissible in evidence:

> 11    [T]he defendant's "waiver of *Miranda* rights must be voluntary,
> 12    knowing, and intelligent." A valid waiver of *Miranda* rights depends
> upon the "totality of the circumstances including the background,
> experience, and conduct of defendant."
>
> 13    There is a presumption against waiver. The prosecution bears the
> 14    burden of proving by a preponderance of the evidence that a
> defendant knowingly and intelligently waived his *Miranda* rights. To
> 15    satisfy this burden, the prosecution must introduce sufficient evidence
> to establish that under the "totality of the circumstances," the
> 16    defendant was aware of "the nature of the right being abandoned and
> the consequences of the decision to abandon it." The government's
> 17    burden to make such a showing "is great," and the court will "indulge
> every reasonable presumption against waiver of fundamental
> 18    constitutional rights."

19    *United States v. Garibay*, 143 F.3d 534, 536-537 (9th Cir. 1998) (citations omitted).

20        The government has not met its burden. As an initial matter, *Garibay* requires courts

21    examine language difficulties "encountered by the defendant during custodial interrogation." *Id.* at

22    537.  Here, Defendant encountered language difficulties during the *Miranda* warnings themselves

23    and during the subsequent interview.  After the agent read the warnings, Kopankov responded "I

24    don't understand.  My English is not very good actually."  (Dkt. No. 249-1 at 2:00.)  When

25

26    ―――――――――――

27    Petitioner's right to speak with an attorney before and during questioning."  *Huynh*, 2015 WL 4923884 at *14.  The portion the government quotes was the detective's *re-iteration* of the right after the defendant indicated he did not understand.  That court did not hold the warnings were

28    adequate *in form* solely based on the agents' reiteration.  Rather, the agent had "accurately stated the next two rights."

United States District Court
Northern District of California

Kopankov does speak to investigators, his account is difficult to follow.  The government argues he conducted the interview in "entirely passable English."  (Dkt. No. 262 at 25.)  But that description overstates the clarity of the interview.  The agent continually restates questions after Kopankov indicates he cannot understand. (Dkt. No. 249-1 at 4:20); *see also Garibay*, 143 F.3d at 537 ("Agent Burke also admitted that he had to rephrase questions when Garibay did not seem to comprehend what was said to him.")  And, early in the interview, the investigators themselves recognize "we might have too much of a language problem."  (Dkt. No. 249-1 at 4:20.)  At the end of the interview the agents stated: "There's a language barrier, this guy can't." (*Id.* at 14:08.)  Together, these language difficulties during the interview weigh against a finding of voluntary waiver.

*Garibay* also describes six additional considerations relevant to the totality of the circumstances test:

> (1) whether the defendant signed a written waiver; (2) whether the defendant was advised of his rights in his native tongue; (3) whether the defendant appeared to understand his rights; (4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were individually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system.

143 F.3d at 538.  These factors are not exhaustive nor is any one factor dispositive.

Drawing inferences against waiver, all factors favor excluding the statements.  First, Kopankov did not sign a written waiver.  Second, he was not advised of his rights in his native tongue. Third, after being advised of his rights initially, he stated "I don't understand."  (Dkt. No. 249-1 at 2:00.)  As the government notes, Kopankov did emphatically agree to speak multiple times.  (*Id.* at 3:00-3:16.)  But that fact speaks more to voluntariness than knowledge.  That he agreed to speak without counsel present is not strong evidence of his ability to comprehend his right not to do so—particularly given the agent delivered defective warnings.  Fourth, defendant did not have the assistance of a translator.  Fifth, while the agent did repeat some of Kopankov's rights individually, the agent repeated those rights in an incomplete manner. (*Id.*)  Sixth, as to experience with the criminal legal system, the government argues Kopankov was arrested months

earlier and invoked his right to be silent.  (Dkt. No. 262 at 24.)  But the government provides no exhibit to support that earlier alleged invocation of his *Miranda* rights.  (*Id.* citing non-exhibit bates number "EK-0000015.")  The only evidence in the record is Kopankov's statement "I've never been arrested."  (Dkt. No. 249-1 at 1:30.)  So, applying the presumption against waiver, the *Garibay* factors counsel exclusion here.

\* \* \*

In sum, the Court finds the *Miranda* warnings were inadequate and the waiver was not knowing.  Thus, the exhibits related to Kopankov's post-arrest statements are not admissible.  The government's motion is DENIED.

### 6.      Defendant's out-of-court statements

The government moves to preclude the defense from offering Defendant's out-of-court statements.  (Dkt. No. 248 at 14.)  This motion is DENIED without prejudice.  The Court will address specific evidentiary objections at trial.

### 7.      Preclude Defendant from arguing any negative inference from the absence of a particular witness

The government asserts Defendant should not be able to argue a "negative inference" on grounds that a particular witness—for example, Mr. Borisov—is missing. (Dkt. No. 248 at 15.) This motion is too vague at this stage. "There is no universal bar against defense comments regarding the government's failure to present witnesses or evidence, although in some instances certain arguments may be improper."  *United States v. Cerna*, No. CR 08-0730 WHA, 2011 WL 838897, at \*17 (N.D. Cal. Mar. 3, 2011).  The motion is DENIED without prejudice.  The government may renew its objection at trial.

### 8.      Exclude evidence or reference to undisclosed affirmative defenses.

The government argues the Court should require the defense provide a specific evidentiary basis for any defense he intends to assert. (Dkt. No. 248 at 15.)  This motion is DENIED without prejudice.  The Court declines to adopt such a blanket rule at this stage.  The government may renew its motion at trial in a more specific context. *See*, *e.g.*, *United States v. Schafer*, 625 F.3d 629, 637 (9th Cir. 2010) (holding a district court may require a defendant provide a prima facie

showing he is eligible for an entrapment defense before presenting that defense to the jury).

### 9.    Co-Conspirator statements & objections

The government provided a list of co-conspirator statements it intends to introduce at trial under Federal Rule of Evidence 801(d)(2)(E).  (Dkt. No. 248 at 15.)  Defendant objects each statement is "inadmissible for lack of foundation because the only means of authenticating them is through testimonial hearsay which would violate[] Mr. Kopankov's Confrontation Clause rights." (Dkt. No. 261 at 14.)  Defendant also submits a series of individualized objections to government exhibits.  (*Id.* at 13-14; Dkt. No. 269.)  And, in the event such statements are admitted, Defendant argues other statements should be admitted under the rule of completeness.

As discussed at the pretrial conference, outside the jury's presence, the government may make an offer of proof as to how each statement will be authenticated.  The May 10 hearing will address how and when this proffer will be made.  Further, at the conference it was represented that the parties are narrowing their disputes as to the hearsay objections to some of the statements. Accordingly, the Court DEFERS ruling on authentication and objections to specific exhibits.

### 10.    Accuracy of translations in evidence

The government provided Defendant certain translations of audio recordings and text messages from spoken or written Bulgarian into English.  (Dkt. No. 248 at 17.)  At the pretrial conference, Defendant represented that in light of the government's amended and narrowed identification of translations, it is preparing a more precise list of objections.  The government's motion is therefore DENIED.

### 11.    Statements related to Defendant's guilty plea

Defendant pled guilty to Indictment Count One (conspiracy to commit robbery affecting interstate commerce) and Count Two (conspiracy to commit kidnapping) in June 2021. (Dkt. Nos. 30, 116, 156.)  Paragraph Two in the agreement set forth the factual basis for the plea, including Defendant's participation in a conspiracy to rob and kidnap "Victim 1."  (Dkt. No. 116 ¶ 2.) The plea agreement contained the following waiver provision:

> I agree not to ask the Court to withdraw my guilty pleas at any time after they are entered. In the event I violate any of the terms of the Agreement, I agree that the facts set forth in Paragraph 2 of this

United States District Court
Northern District of California

Agreement and, if applicable, the fact that I made a sworn admission to them in a previous court proceeding, shall be admissible against me in any subsequent proceeding, including at trial. **In any subsequent proceeding conducted after I violate any of the terms of the Agreement, I expressly waive any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission to them at a previous court proceeding.**

(Dkt. No. 116 ¶ 6 (emphasis added).)

During sentencing, however, Defendant's then-counsel presented arguments that implied Plaintiff was not, in fact, guilty of the charged offenses. (Dkt. No. 150 at 31.) The Court asked: "Are you, like, making a motion on behalf of your client to withdraw the guilty plea?" (*Id.* at 33.) After then-counsel stated Defendant was not withdrawing his plea, the Court directed questions directly to Defendant. (*Id.* at 36.) Eventually, Defendant made the following statement through an interpreter:

I just wanted to say that I was not present during all these conversations that they happened with the informant and that I -- and I didn't know about those things. I did not agree to those things. Only when the case started, I learned about these things. And before that, I never -- I've never known about those things. I never heard of them. And I think in this document, my attorney is trying to explain very well -- explain well what I understand and what I don't understand. But in principle, yes, I admit my guilt in both counts.

(*Id.* at 38.) Given the "significant tension" between that statement and Paragraph Two in the plea, the Court postponed sentencing. (*Id.* at 43.)

Defendant then moved to withdraw the plea of guilty. (Dkt. Nos. 163, 166.) The Court granted Defendant's motion to withdraw the plea, finding "there could be an ineffective assistance issue here if Mr. Kopankov is not allowed to withdraw his guilty plea" because he "has not been properly advised of the pros and cons of pleading guilty." (Dkt. No. 189 at 4-5.)

Defendant—then represented by his original counsel—moved to exclude the withdrawn plea agreement and in-court plea discussions. (Dkt. No. 182.) Then defense counsel argued Defendant had not breached the plea agreement because "newly discovered evidence and intervening circumstances" led to the withdrawal of Kopankov's plea. (*Id.* at 6.) The Court disagreed, stating, "I don't think this is a situation in which evidence of actual innocence has, you

1  know, resulted in a withdrawal of the guilty plea.  I don't think that's an accurate way to

2  characterize this situation. And so your motion to exclude the statements made in connection with

3  the guilty plea…for impeachment or rebuttal purposes is denied."  (Dkt. No. 192 at 12.)  The

4  Court also stated:

5

6  > So, I think the plea agreement was breached and – but I guess what
>   I'm saying is even if the plea agreement wasn't breached, and even if
>   there was no language in the plea agreement regarding waiver of Rule
7  > 410…The Government is asking only to use the statements for
>   impeachment and rebuttal, and I think the Government would be able
8  > to do that regardless [of the Rule 410 waiver].

9  (*Id.* at 8.)  Defendant's counsel subsequently withdrew and was replaced by the Office of the

10  Federal Public Defender.

11      The government moves the Court to allow the plea agreement and the plea colloquy as

12  "impeachment or rebuttal" evidence in accordance with the Court's earlier ruling.[3]  (Dkt. No. 248

13  at 18.)  Defendant moves to exclude these provisions.  (Dkt. No. 249 at 8.)

14              **a.      Admissibility**

15      Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) provide that

16  statements made during a proceeding on a plea are inadmissible against the defendant, even if the

17  plea is later withdrawn.  A defendant may waive these rights.  *United States v. Mezzanatto*, 513

18  U.S. 196, 210-211 (1995).

19      Defendant makes four arguments why such evidence is inadmissible notwithstanding the

20  Evidence Code Rule 410 waiver.  First, Defendant argues he did not breach the plea because the

21  Court rejected the plea. (Dkt. No. 249 at 12.)  Next, Defendant argues the government breached

22  the plea prior to his request to withdraw the plea.  (*Id.* at 13.)  Third, he argues the Rule 410

23  waiver was not knowingly and voluntarily entered.  (*Id.* at 9.)  Fourth, he argues the Rule 410

24  waiver is narrowly tailored to only the plea agreement so "his statements in the plea colloquy, the

25  Presentence Report, and at sentencing—are thus inadmissible."  (*Id.* at 8-9.)  The Court addresses

26

27  ─────────────

28  [3] The Court declines to apply the law of the case doctrine here.  There is no blanket impeachment exception to Rule 410.  *United States v. Mezzanatto*, 513 U.S. 196, 200 n.2 (1995).  Thus, the Court will consider the validity and scope of the Rule 410 waiver.

13

United States District Court
Northern District of California

United States District Court
Northern District of California

1  each argument in turn.

### i.      The Court did not reject the plea

Defendant insists the Court rejected the plea agreement because the Court ordered a new plea agreement and colloquy due to a typographical error.  (Dkt. No. 149.)  The Court disagrees.  On June 23, 2021, the Court found Defendant competent, his plea knowing and voluntary, and accepted his plea to counts one and two of the Indictment.  (Dkt. No. 118.)  After the initial sentencing hearing, the Court issued the request for a revised agreement, but Defendant then moved "to withdraw" his plea.  (Dkt. No. 163, 166.)  The Court granted that motion.  (Dkt. No. 177.)  If the Court had rejected the plea agreement, there would have been no plea to allow Defendant to withdraw.  Thus, the agreement was in place and then withdrawn.

### ii.      The Government did not breach the plea

Next, Defendant claims the government breached its obligations under the plea agreement during the sentencing hearing.  The government promised to "recommend a sentence within the range associated with the Guidelines calculation set out in paragraph 7 above, unless the defendant violates the terms of the Agreement above or fails to accept responsibility."  (Dkt. No. 116 ¶ 14.)  During Borisov's sentencing—not Kopankov's—the Court inquired whether he could consider the likelihood of the conspiracies' success when sentencing.  (Dkt. No. 150 at 15-16.)   The government argued the agreed-upon three-point reduction was appropriate in this case because the offense was inchoate, but Borisov should not get extra-credit (beyond the three-point reduction) for being a shoddy planner.  (*Id.* at 16-17.)  The government did not breach the plea agreement by "winking at the district court to impliedly request a different outcome." *United States v. Farias-Contreras*, 60 F.4th 534, 542 (9th Cir. 2023).  Rather, the government was explaining only that the guidelines already accounted for the relevant consideration.

### iii.      The Rule 410 waiver is valid

Next, Defendant argues the Rule 410 waiver was not knowingly or voluntarily entered.  As explained above, the Court specifically found the plea was knowingly and voluntarily made.  The only evidence Defendant offers that his Rule 410 waiver in particular was not knowingly and voluntarily made is a declaration from his previous counsel averring counsel "did not specifically

14

focus on the Rule 410 waiver" and Defendant's wife, rather than a professional translator, "translated the plea agreement" and the discussions regarding the plea agreement for Defendant. (Dkt. No. 250 ¶¶ 5-6.)  Defendant also emphasizes the Court never specifically described the Rule 410 waiver during the plea colloquy (Dkt. No. 156 at 9), and that he never saw a written translation of the agreement.  (*Id.* at 8.)

The Court is not persuaded. The Court confirmed Defendant's wife interpreted the agreement for him, and Defendant agreed he "had enough time to develop a good understanding of the Plea Agreement" and indeed, he discussed the plea agreement with his counsel "quite a few times."  (*Id.* at 7-8.)  In response to the Court's statement that although Defendant had not seen a written translation of the agreement, he had discussed the agreement "at length" with his counsel, and his wife had assisted Defendant in translation, Defendant responded: "Yes.  We have discussed it again and again.  And, in fact, the last time we discussed it, it was just about 15 minutes ago."  (*Id.* at 7.)  And, ultimately, the Court found the plea knowing and voluntary.  (Dkt. No. 156 at 34.)  Thus, Defendant agreed to the waiver in his agreement.  When he later decided to withdraw the plea, he breached the agreement, as the Court previously found.  Thus, his waiver is in effect.

Defendant's reliance on appeal waiver cases is unpersuasive.  Rule 11 specifically requires a district court to advise the defendant of any plea agreement term waiving the right to appeal or to collaterally attack the sentence. Fed. R. Crim. P. 11(b)(1)(N).  There is no comparable requirement for a waiver of Federal Rule of Evidence 410 in the event the defendant withdraws his plea in breach of a plea agreement. Thus, in *United States v. Blake*, 288 Fed. Appx. 102 (July 23, 2008), after reciting that the district court did not advise the defendant of the appeal waiver in violation of the Rule 11, the Ninth Circuit examined whether other evidence outside the plea colloquy suggested the defendant understood.  The court concluded the defendant's lack of criminal justice experience, the fact he had only an eighth grade education, a competency test revealed he was "low functioning . . . in terms of overall intellectual ability," and his allocution before the sentencing judge was "nearly unintelligible" all suggested his appeal waiver was not knowing and voluntarily.  Those facts are not present here.

United States District Court
Northern District of California

### iv.     The Rule 410 waiver's scope

The government seeks to introduce evidence of the plea and the sentencing transcript for purposes of impeachment or rebuttal.[4]

As to the plea itself and the plea colloquy, the Rule 410 waiver here covers only "the facts set forth in Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission to them at a previous court proceeding."  (Dkt. No. 116 ¶ 6.)  Thus, paragraph two of the plea and the fact Defendant made a sworn admission to those facts is admissible for purposes of impeachment and rebuttal.  *See United States v. Rebbe*, 314 F.3d 402, 408 (9th Cir. 2002) (identifying the defenses that can be made without opening the door to admissions made in plea proffer).

The statements made during the sentencing colloquy, are covered by Federal Rule of Evidence 410 and do not fall within the waiver.  (Dkt. No. 150.)  Rule 410, by its very terms, extends protection to evidence of "(1) a guilty plea that was later withdrawn; (2) a nolo contendere plea; (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure."  Fed. R. Evid. 410 (emphasis added).  The sentencing colloquy here was a proceeding on the plea because the Court inquired whether the plea was, in fact, voluntarily and knowingly made and highlighted the tensions between the plea and the statements in the sentencing memorandum.  *See* Fed. R. Crim. P. 11(f) (describing "any related statements"); *see also United States v. Escobedo*, 757 F.3d 229, 234 (5th Cir. 2014) (finding statements made at a re-arraignment after the plea were inadmissible under Rule 410 as statements "in connection with his initial plea of guilty.")  Thus, the statements at the sentencing are not admissible under Rule 410 and are not subject to the Rule 410 waiver.

## II.     DEFENDANT'S MOTION IN LIMINE (DKT. NO. 249)

### 1.     Exclude statements related to Defendant's guilty plea

Defendant's motion is GRANTED in part and DENIED in part in accordance with the reasons stated in Part I.11.

### 2.     Exclude out-of-court statements

---

[4] Defendant also objects to the presentence report on these same grounds.  Because any statements from the presentence report are not before the Court, the Court cannot determine whether they would be admissible at this time.

1    Defendant's motion is DEFFERED for the reasons stated in Part I.9.

2          **3.      Exclude other acts evidence**

3          Kopankov is accused of entering a conspiracy to kidnap and rob a man named "Sergey" in

4    April 2019.  The government intends to proffer evidence of events in December 2018 as part of its

5    case-in-chief.  (Dkt. No. 262 at 17.)[5]  Defendant moves to exclude evidence of "any other crime,

6    wrong, or act" under Federal Rule of Evidence 404(b) and Rule 403.

7          The government argues such evidence is admissible.  Specifically, the government states:

8

9          The evidence will show that Mr. Kopankov was operating in illegal
           marijuana growing circles in Humboldt County, with others originally
10         from Bulgaria, in December 2018. That month, a large marijuana deal
           was going to happen. A number of men, including an Edgar Garcia,
11         flew in from Atlanta on a private plane with suitcases of cash.
           Kopankov met them in a car outside the airport—the same car that,
12         the day before, he was seen loading up with bags of marijuana and
           driving at the Bear River Casino about 30 miles away. But law
13         enforcement learned of this impending deal and seized the money—
           which totaled around $2 million.

14         Weeks later, there is evidence of Kopankov discussing a plan to make
15         money, "no matter how," with Emanoel Borisov, another Bulgarian
           national operating in Humboldt and also with Chicago connections.
16         This discussion, the government will show, is the origin of what
           would solidify over coming weeks into a plot to seize and rob a man
17         named Sergey, another Bulgarian national. This same Sergey was
           *present* at the Holiday Inn where Kopankov was detained on
18         December 19, 2018 and the millions seized. Soon thereafter the
           informant reported that Mr. Kopankov said the FBI took $2.5 million
19         from him. Borisov, in a co-conspirator statement, mentions that
           Kopankov was spreading a rumor that Mexican individuals, including
20         an "Edgar," were after the "Bulgarian guy."

21         In May 2019, the month after Kopankov's arrest, a search warrant of
           an illegal Humboldt marijuana grow found, on the property,
22         documents showing property ownership by a Sergey with the same
           Henderson, Nevada, address on the driver's license of the Sergey
23         stopped in December 2018.

     (Dkt. No. 262 at 17-18.)

24         Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a

25   person's character in order to show that on a particular occasion the person acted in accordance

26

27   ─────────────────────
     [5] Defendant objects that the Government did not give notice of its intent to present such evidence.
28   The government responds that it did provide such notice to Defendant's prior counsel in April
     2021.

1   with the character." Fed. R. Evid. 404(b)(1).  But the evidence "may be admissible for another

2   purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

3   absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

4        The government argues the exceptions to Rule 404(b) apply here.  *See* Fed. R. Evid.

5   404(b)(2).  Defendant disagrees and argues that, if admissible under Rule 404(b), evidence related to

6   the December 2018 incidents should be excluded as unfairly prejudicial under Rule 403.

7        The December 2018 events are admissible, however, under Rule 404(b)(2) as "material to

8   showing he agreed with others to commit the offenses of robbery and kidnapping and [] how he was

9   able to play a critical role in accomplishing the conspiracies' goals." (Dkt. No. 262 at 18.)  Rule

10  404(b)(2) allows evidence of prior acts to prove "motive, opportunity, intent, preparation, plan,

11  knowledge, identity, absence of mistake, or lack of accident," rather than propensity.  Fed. R. Evid.

12  404(b)(2).  Here, the proposed connection between the December events and the conspiracy that

13  followed is (1) a recording in which a conspirator declared a desire to make money "no matter

14  what" shortly after the December arrest and loss of the $2.5 million, (2) that Kopankov and

15  "Edgar" lost the 2.5 million, (3) and the conspirators later allegedly agreed to blame "Edgar" for

16  the kidnapping, and (4) the earlier arrest may explain how Kopankov knew Sergey.  Thus, the

17  alleged earlier acts could establish a motive (paying Edgar), means (blaming Edgar), and

18  opportunity (knowing Sergey) for the alleged conspiracy to rob and kidnap Sergey.  Because Rule

19  404(b)(2) describes establishing motive, means, and opportunity as a permissible use for "other act

20  evidence," these facts are admissible in this case.

21       Extensive description of these earlier events could unfairly prejudice a jury against

22  Kopankov, while providing limited evidentiary value.  Thus, while Defendant's motion is

23  DENIED, Defendant may object on specific Rule 404(b)(2) grounds or Rule 403 grounds during

24  trial if the government exceeds the narrow bounds described in 404(b)(2).

25              **4.      Exclude gender-based slurs and racially insensitive references.**

26       Defendant moves to exclude evidence of "gender-based slurs and racially insensitive

27  references (e.g., "the Mexicans," Dkt. 1 ¶ 8) tends to unfairly inflame the passion of the jury while

28  providing no probative value, warranting sanitization of evidence."  The government does not object

United States District Court
Northern District of California

in principle but argues that reference to "the Mexicans" in a recording will be highly relevant at trial to explain a critical portion of the conspiracy. (Dkt. No. 262 at 19.)  Moreover, the government contends that—in context—the phrase refers to specific individuals Borisov believed were of Mexican nationality, rather than a racially insensitive reference to persons of Mexican descent in general.  (*Id*.; *see also* Gov.'s Ex. 1.)  The Court agrees that the full quotation is necessary to provide context for the recording.  Given the recordings' context, the risk of unfair prejudice does not substantially outweigh the probative value of the full recording containing the phrase "the Mexicans." *See* Fed. R. Evid. 403.

### 5. Exclude references to organized crime

Defendant moves to exclude references to organized crime and gang membership—such as "the Bulgarian mafia, or Mexican gangs." (Dkt. No. 249 at 19.)  The Government does not object to this request "in principle."  (Dkt. No. 262 at 20.)  Thus, Defendant's motion is GRANTED as unopposed.

### 6. Introduce hearsay statements central to defense

Defendant moves to introduce "hearsay statements central to the defense." (Dkt. No. 249 at 20.)  This motion is DENIED without prejudice as premature.  Defendant does not explain which statements he intends to introduce nor how their exclusion under general hearsay principles would violate due process.  Defendant may renew this motion at trial should he wish to introduce certain hearsay statements.

### 7. Introduce evidence and permit cross-examination on the quality of government investigation

Defendant moves to introduce evidence and permit cross-examination on the quality of the government's investigation.  This motion is likewise DEFERRED until trial subject to specific evidentiary objections and the proffer process for *Henthorn*-type material described in Part I.4.

### 8. Exclude evidence of Defendant's post-arrest statements

Defendant's motion is GRANTED for the reasons stated in Part I.5.

### 9. Exclude government witnesses from the courtroom and require designated case agent to testify first

Defendant moves to exclude non-exempt government witnesses from the courtroom and to

require the designated case agent testify first. This motion is GRANTED in part and DENIED in part. The government does not oppose exclusion of non-exempt government witnesses from the courtroom. So, Defendant's motion to exclude those witnesses from the courtroom is GRANTED.

The government does, however, oppose a requirement that it present the case agents testimony first. The Ninth Circuit has declined "to adopt a presumption that would deprive the prosecution of the opportunity to present its own case without interference" by requiring case agents testify first. *United States v. Valencia-Riascos*, 696 F.3d 938, 943 (9th Cir. 2012). Given the Ninth Circuit's guidance to allow the government leeway in how to present its case, the Court DENIES Defendant's motion to require the agent testify first.

## III. OTHER MOTIONS

### 1. Defense Motion for Immunity for CHS

In Defendant's opposition to the government's motions in limine, Defendant moves to compel the government to grant CHS immunity for his testimony in this matter. (Dkt. No. 261 at 18.) The government has not yet had a chance to respond to this motion.

"A criminal defendant is not entitled to compel the government to grant immunity to a witness unless (1) the testimony is relevant and (2) "the government distorted the judicial fact-finding process by denying immunity." *United States v. Alvarez*, 358 F.3d 1194, 1216 (9th Cir. 2004). Defendant argues CH's testimony meets this standard because:

> [h]is testimony is highly relevant and exculpatory. He offered inducements to Borisov and Brooks that both motivated and facilitated the robbery. He paid for the airline tickets and clothing allegedly used by Borisov and Brooks, the alleged co-conspirators in this case. He suggested many aspects of the alleged robbery, wowing Borisov and Brooks by telling them that the alleged target had 150 million dollars buried. He insisted that Borisov make sure that Mr. Kopankov accompany Borisov to a robbery when he found out that Mr. Kopankov was allegedly proposing a different plan. It is crucial that jurors be informed of CHS's motivation and facilitation of Borisov traveling to California and preparing for a robbery, to counteract the argument that he took these steps because of motivation, facilitation, and agreement from Mr. Kopankov.

(Dkt. No. 261 at 18.)

United States District Court
Northern District of California

1    The Court DEFERS this motion to the further pretrial conference on May 10, 2023.  The

2  government may respond by May 8, 2023.  The government's response should be no longer than

3  three (3) pages of argument.

4                                    **CONCLUSION**

5    Defendant shall file the proffer related to the government's fourth motion in limine by May

6  4, 2023.  The government may respond to that motion and file its response to Defendant's

7  additional motion in limine to grant the CHS immunity by May 8, 2023.  The Court sets a further

8  pretrial conference for May 10, 2023, at 1:00 p.m., at 450 Golden Gate Avenue, San Francisco,

9  Courtroom 8, 19th Floor.

10   **IT IS SO ORDERED.**

11   This Order resolves Dkt. Nos. 248, 249.

12  Dated: May 1, 2023

13

14

15                                    JACQUELINE SCOTT CORLEY
                                       United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28